**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| NITROcrete LLC, | § § § | |
| Plaintiff, | § § | Case No.: 1:25-cv-0198 |
| v. | § § § | **COMPLAINT** |
| Drew Raymond Nelson, Mark Edward Nelson, and Nitro Founders II, LLC | § § § | **JURY TRIAL DEMANDED** |
| Defendants. | § § | |

Plaintiff, NITROcrete LLC, by and through its attorneys, Taft Stettinius & Hollister LLP, for its Complaint against Defendants, Drew Raymond Nelson, Mark Edward Nelson, and Nitro Founders II, LLC, allege, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. This is an action for misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1831, et seq. and the Texas Uniform Trade Secrets Act, TEX. CIV. PRAC. & REM. CODE §§ 134A.001, et seq., and breach of contract.

2. Plaintiff seeks damages in an amount to be determined at trial, a permanent injunction enjoining actual and threatened misappropriation of Plaintiff's trade secrets, and specific performance of contractual obligations owed to Plaintiff by Drew Raymond Nelson and Mark Edward Nelson.

170771116

## JURISDICTION

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under Defend Trade Secrets Act.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims in this action pursuant to 28 U.S.C. § 1367(a).

## VENUE

5. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## THE PARTIES

6. Plaintiff, NITROcrete LLC ("**NITROcrete**") is a limited liability company formed under the laws of Indiana having its principal place of business in Fort Collins, Colorado.

7. NITROcrete is in the business of providing products and services relating to liquid nitrogen concrete cooling systems.

8. NITROcrete conducts business in, provides products to, and renders services to multiple customers in the Western District of Texas.

9. NITROcrete employees conduct business and render services in the Western District of Texas including installation, maintenance, repair, and servicing of NITROcrete systems located in the Western District of Texas.

10. As further described herein below, Defendants acts of trade secret misappropriation involve and relate to NITROcrete customers in the Western District of Texas.

11. Defendant, Drew Raymond Nelson ("**Drew Nelson**"), is an individual who resides in Fort Collins, Colorado and is a citizen of Colorado.

12. Defendant, Mark Edward Nelson ("**Mark Nelson**"), is an individual who resides in Fort Collins, Colorado and is a citizen of Colorado.

13. One or both of Drew Nelson and Mark Nelson (the "**Nelsons**") conduct business or are preparing to conduct business under the name Innovations Group.

14. Defendant, Nitro Founders II, LLC ("**Nitro II**"), is a limited liability company formed under the laws of Colorado having its principal place of business in Fort Collins, Colorado.

15. Nitro II is owned or controlled by one or both of the Nelsons.

16. Nitro II conducts business or is preparing to conduct business under the name Innovations Group.

## FACTS

**A. Background and Overview**

17. NITROcrete owns a portfolio of intellectual property rights relating to nitrogen concrete cooling systems, processes, software, devices, operating techniques, and system and process design, integration and implementation, among other aspects of cooling concrete with liquid nitrogen ("**NITROcrete IP**").

18. The NITROcrete IP includes trade secrets and patents among other intellectual property.

19. The NITROcrete IP was in substantial part acquired by NITROcrete through a series of transactions including an asset purchase pursuant to sections 363 and 365 of the United States Bankruptcy Code ("**Bankruptcy Purchase**") and is today owned by NITROcrete.

20. In the Bankruptcy Purchase, NITROcrete purchased substantially all assets of NITROCrete, LLC (a predecessor entity distinct from Plaintiff, NITROcrete LLC and referred to

herein as "**Old Nitrocrete**"), Nitro Holdings, LLC, NITROcrete IP, LLC, NITROcrete Equipment, LLC, and NITROcrete Holdings, LLC (collectively, the "**Old Nitrocrete Companies**").

### B. NITROcrete's Trade Secrets

21. Through the Bankruptcy Purchase, NITROcrete purchased trade secrets from the Old Nitrocrete Companies (the "**NITROcrete Trade Secrets**").

22. The Old Nitrocrete Companies had previously purchased the NITROcrete Trade Secrets from the Nelsons and one or more companies owned or controlled by one or both of the Nelsons.

23. In connection with the purchase referred to in paragraph 22, the Nelsons and one or more companies owned or controlled by one or both of the Nelsons represented or warranted the existence of the NITROcrete Trade Secrets and their confidential and valuable nature.

24. At the time of the purchase referred to in paragraph 22, the Nelsons had detailed and extensive knowledge and possession of the NITROcrete Trade Secrets and how they can be commercially exploited.

25. The NITROcrete Trade Secrets include controls for liquid nitrogen systems that integrate with concrete batch plant software and systems.

26. The NITROcrete Trade Secrets include information for adapting, calibrating, configuring, customizing, and tuning controls for liquid nitrogen equipment and for integrating with different and varied concrete batch plant software and systems.

27. Some of the NITROcrete Trade Secrets are embodied in software including programmable logic controller (PLC) software.

28. The NITROcrete Trade Secrets include specifications, drawings, renderings, schematics, design, and production details among other information.

4

29. The NITROcrete Trade Secrets include "dry-well" information relating to failed, suboptimal, or unsatisfactory approaches and attempts at adapting, calibrating, configuring, customizing, and tuning controls for liquid nitrogen equipment and for integrating with different and varied concrete batch plant software and systems.

30. The NITROcrete Trade Secrets include confidential business information including pricing information, information about vendors, and information about customers and their needs and requirements.

31. The NITROcrete Trade Secrets were developed and refined over multiple years of extensive effort.

32. Development of the NITROcrete Trade Secrets required a high degree of effort, skill, ingenuity, and expense.

33. Development of the NITROcrete Trade Secrets required learning through trial and error in connection with multiple different systems and operating environments.

34. Mark Nelson developed at least some of the NITROcrete Trade Secrets.

35. Mark Nelson gained knowledge of at least some of the NITROcrete Trade Secrets through confidential relationships with the Old Nitrocrete Companies or their predecessors in interest.

36. Drew Nelson developed at least some of the NITROcrete Trade Secrets.

37. Drew Nelson gained knowledge of at least some the NITROcrete Trade Secrets through confidential relationships with the Old Nitrocrete Companies or their predecessors in interest.

38. Each of the Nelsons has detailed and extensive knowledge of at least some the NITROcrete Trade Secrets.

39. The NITROcrete Trade Secrets are not disclosed or included in any patents or published patent applications.

40. The NITROcrete Trade Secrets are not disclosed or included in non-patent publications including scientific, engineering, or other technical journals, trade publications, and industry publications.

41. The NITROcrete Trade Secrets are not generally known.

42. The NITROcrete Trade Secrets are not readily ascertainable by third parties using legitimate means.

43. The NITROcrete Trade Secrets have been subject to reasonable measures to protect their confidentiality including using confidentiality and non-disclosure agreements to preserve their confidentiality and prevent their disclosure; marking documents and identifying communications and indicating the confidential, proprietary, and/or trade secret nature of such documents and communications; restricting access to the NITROcrete Trade Secrets; and maintaining physical possession and control over the NITROcrete Trade Secrets.

44. The NITROcrete Trade Secrets derive independent economic value from not being generally known to others, and not being readily ascertainable by third parties using legitimate means.

C. **The Nelsons' Obligations and Duties of Confidentiality to NITROcrete**

45. NITROcrete is the successor and assign of multiple agreements entered into by the Nelsons.

46. The Nelsons owe contractual obligations to NITROcrete as successor and assign of these agreements.

170771116

47. Both of the Nelsons owe a duty or obligation of confidentiality with respect to the NITROcrete Trade Secrets to one or more of the Old Nitrocrete Companies pursuant to an Asset Purchase and Contribution Agreement made effective on or about January 31, 2020 ("**2020 APCA**").

48. NITROcrete acquired the 2020 APCA through the Bankruptcy Purchase.

49. NITROcrete is the successor in interest to the Old Nitrocrete Companies with respect to the 2020 APCA.

50. The Nelsons owe a duty or obligation of confidentiality with respect to the NITROcrete Trade Secrets under the 2020 APCA.

51. On or about January 31, 2020, Drew Nelson entered into an employment Agreement with Old Nitrocrete ("**Employment Agreement**").

52. Under the Employment Agreement, Drew Nelson agreed and covenant not to divulge to any person and not to use the NITROcrete Trade Secrets at any time during his employment or thereafter.

53. Under the Employment Agreement, Drew Nelson granted all rights of every kind in and to all trade secrets he created or conceived to Old Nitrocrete and its successors or assigns.

**D. Defendants' Misappropriation of the NITROcrete Trade Secrets**

54. Defendants are offering to sell consulting services, software, and intellectual property under the name Innovations Group including via the website innovations-group.com ("**Defendants' Website**").

55. The consulting services, software, and intellectual property that Defendants are offering to sell are in the concrete cooling business including related technology and services business.

7

56. Nitro Founders II, LLC offers offer to sell consulting services, software, or intellectual property under the name Innovations Group including via Defendants' Website.

57. Through Defendants' Website or through other channels, Defendants have and are offering to sell to third parties intellectual property and software that includes the NITROcrete Trade Secrets.

58. Defendants have offered to sell to one or more customers of NITROcrete located in the Western District of Texas intellectual property and software that includes the NITROcrete Trade Secrets.

59. Defendants have offered to sell to one or more other persons located in the Western District of Texas intellectual property and software that includes the NITROcrete Trade Secrets.

60. Through Defendants' Website or through other channels, Defendants have and are offering to sell to third parties intellectual property and software that was developed based upon or using the NITROcrete Trade Secrets.

61. Defendants have offered to sell to one or more customers of NITROcrete located in the Western District of Texas intellectual property and software that was developed based upon or using the NITROcrete Trade Secrets.

62. Defendants have offered to sell to one or more other persons located in the Western District of Texas intellectual property and software that was developed based upon or using the NITROcrete Trade Secrets.

63. Through Defendants' Website or through other channels, Defendants have and are offering to sell to third parties intellectual property and software that copy, duplicate, or replicate the NITROcrete Trade Secrets.

64. Defendants have offered to sell to one or more customers of NITROcrete located in the Western District of Texas intellectual property and software that copy, duplicate, or replicate the NITROcrete Trade Secrets.

65. Defendants have offered to sell to one or more other persons located in the Western District of Texas intellectual property and software that copy, duplicate, or replicate the NITROcrete Trade Secrets.

66. Through Defendants' Website or through other channels, Defendants have falsely or inaccurately stated or suggested that they have avoided the use of the NITROcrete Trade Secrets in developing new intellectual property and software.

67. Through Defendants' Website or through other channels, Defendants have and are offering to sell to third parties consulting services that include or use the NITROcrete Trade Secrets.

68. Defendants have offered to sell to one or more customers of NITROcrete located in the Western District of Texas consulting services that include or use the NITROcrete Trade Secrets.

69. Defendants have offered to sell to one or more other persons located in the Western District of Texas consulting services that include or use the NITROcrete Trade Secrets.

70. Through Defendants' Website or through other channels, Defendants have and are offering to sell to third parties consulting, services developed based upon or using the NITROcrete Trade Secrets.

71. Defendants have offered to sell to one or more customers of NITROcrete located in the Western District of Texas consulting, services developed based upon or using the NITROcrete Trade Secrets.

72. Defendants have offered to sell to one or more other persons located in the Western District of Texas consulting, services developed based upon or using the NITROcrete Trade Secrets.

73. Through Defendants' Website or through other channels, Defendants have and are offering to sell to third parties consulting, services that copy, duplicate, or replicate the NITROcrete Trade Secrets.

74. Defendants have offered to sell to one or more customers of NITROcrete located in the Western District of Texas consulting, services that copy, duplicate, or replicate the NITROcrete Trade Secrets.

75. Defendants have offered to sell to one or more other persons located in the Western District of Texas consulting, services that copy, duplicate, or replicate the NITROcrete Trade Secrets.

76. The Nelsons have formed or are planning or preparing to form one or more other legal entities to sell intellectual property, software, or consulting services that include the NITROcrete Trade Secrets.

77. The Nelsons have formed or are planning or preparing to form one or more other legal entities to sell intellectual property, software, provide consulting services developed based upon or using the NITROcrete Trade Secrets.

78. The Nelsons have formed or are planning or preparing to form one or more other legal entities to sell intellectual property, software, or provide consulting services that copy, duplicate, or replicate the NITROcrete Trade Secrets.

170771116

### E. The Nelsons' Obligations to Execute Patent Assignments and Declarations

79. The Nelsons executed multiple agreements which obligate them to sign additional patent assignments and declarations in favor of NITROcrete.

**1. Obligations Under the '550 Assignment**

80. On or about August 29, 2019, the Nelsons executed an agreement titled ASSIGNMENT OF PATENT APPLICATION ("**the '550 Assignment**") identifying U.S. Application No. 62/520,550 ("**the '550 Application**").

81. Under the '550 Assignment, the Nelsons assigned to Mandak Holdings, LLC ("**Mandak**"), all right, title, and interest in and to the '550 Application, the inventions and improvements set forth and described therein, and any U.S. or foreign patents granted on the same, among other assigned rights.

82. Under the '550 Assignment, the Nelsons agreed to execute, verify, acknowledge, and deliver all further patent applications and instruments of transfer relating to the inventions and improvements of the '550 Application.

83. Under the '550 Assignment, the Nelsons agreed to perform such other acts as may be lawfully requested to obtain or maintain patents for the inventions and improvements of the '550 Application in any and all countries, and to vest title thereto in the assignee or its successors and assigns.

84. The '550 Assignment and the Nelsons' obligations thereunder inure to the benefit of Mandak's successors and assigns.

85. NITROcrete is the successor and assign of Mandak with respect to the '550 Assignment, the '550 Application, and the inventions and improvements set forth and described therein.

### 2. Obligations Under the '456 Assignment

86. On or about August 29, 2019, the Nelsons executed an agreement titled ASSIGNMENT OF PATENT APPLICATION ("**the '456 Assignment**") identifying U.S. Application No. 62/467,456 ("**the '456 Application**").

87. Under the '456 Assignment, the Nelsons assigned to Mandak, all right, title, and interest in and to the '456 Application, the inventions and improvements set forth and described therein, and any U.S. or foreign patents granted on the same, among other assigned rights.

88. Under the '456 Assignment, the Nelsons agreed to execute, verify, acknowledge, and deliver all further patent applications and instruments of transfer relating to the inventions and improvements of the '456 Application.

89. Under the '456 Assignment, the Nelsons agreed to perform such other acts as may be lawfully requested to obtain or maintain patents for the inventions and improvements of the '456 Application in any and all countries, and to vest title thereto in the assignee or its successors and assigns.

90. The '456 Assignment and the Nelsons' obligations thereunder inure to the benefit of Mandak's successors and assigns.

91. NITROcrete is the successor and assign of Mandak with respect to the '456 Assignment, the '456 Application, and the inventions and improvements set forth and described therein.

### 3. Obligations Under the '795 Assignment

92. On or about August 29, 2019, the Nelsons executed an agreement titled ASSIGNMENT OF PATENT APPLICATION ("**the '795 Assignment**") identifying U.S. Application No. 15/882,795 ("**the '795 Application**").

93. Under the '795 Assignment, the Nelsons assigned to Mandak, all right, title, and interest in and to the '795 Application, the inventions and improvements set forth and described therein, and any U.S. or foreign patents granted on the same, among other assigned rights.

94. Under the '795 Assignment, the Nelsons agreed to execute, verify, acknowledge, and deliver all further patent applications and instruments of transfer relating to the inventions and improvements of the '795 Application.

95. Under the '795 Assignment, the Nelsons agreed to perform such other acts as may be lawfully requested to obtain or maintain patents for the inventions and improvements of the '795 Application in any and all countries, and to vest title thereto in the assignee or its successors and assigns.

96. The '795 Assignment and the Nelsons' obligations thereunder inure to the benefit of Mandak's successors and assigns.

97. NITROcrete is the successor and assign of Mandak with respect to the '795 Assignment, the '795 Application, and the inventions and improvements set forth and described therein.

## COUNT 1 – MISAPPROPRIATION OF TRADE SECRETS
### (Defend Trade Secrets Act, 18 U.S.C. § 1831, et seq.)

98. NITROcrete repeats and realleges paragraphs 1 through 102 hereof, as if fully set forth herein.

99. As described in the allegations herein, NITROcrete owns the NITROcrete Trade Secrets.

100. As described in the allegations herein, the NITROcrete Trade Secrets are not generally known.

13

101. As described in the allegations herein, the NITROcrete Trade Secrets are not readily ascertainable by third parties using legitimate means.

102. As described in the allegations herein, the NITROcrete Trade Secrets derive actual and potential economic value including by not being generally known or readily ascertainable by third parties using legitimate means.

103. As described herein, Plaintiff and its predecessors in interest have taken reasonable measures to keep secret and maintain confidentiality of the NITROcrete Trade Secrets including, but not limited to precluding individuals with such information from divulging information through the use of non-disclosure agreements, marking documents and identifying communications and indicating the confidential, proprietary, and/or trade secret nature of such documents and communications, and maintaining physical possession and control of trade secret, confidential, and proprietary information.

104. As described in the allegations here, Defendants owe a duty or obligation to Plaintiff to maintain the secrecy of the NITROcrete Trade Secrets by, among other things, written agreements including obligations of confidentiality, non-disclosure, and non-use, presence of a confidential relationship, and industry standards.

105. Nevertheless, Defendants have willfully misappropriated and threatened to willfully misappropriate the NITROcrete Trade Secrets by using them and offering to sell them as described in the allegations herein.

106. As a direct and proximate result of Defendants' misappropriation of Plaintiff's confidential, proprietary trade secret information, Plaintiff has suffered and will continue to suffer injury, including but not limited to actual damages and immediate and irreparable harm until

Defendants are enjoined from further possession, use, and disclosure of the NITROcrete Trade Secrets.

107. By reason of the foregoing, Defendants are liable to Plaintiff in an amount to be determined at trial.

108. Plaintiff lacks an adequate remedy at law.

109. Because of Defendants' violations of the federal Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b), Plaintiff is entitled, among other remedies, to an injunction prohibiting further possession, use, and disclosure of the NITROcrete Trade Secrets.

## COUNT 2 – MISAPPROPRIATION OF TRADE SECRETS
### (Texas Uniform Trade Secrets Act, TEX. CIV. PRAC. & REM. CODE §§ 134A.001-.008)

110. NITROcrete repeats and realleges paragraphs 1 through 102 hereof, as if fully set forth herein.

111. As described in the allegations herein, NITROcrete owns the NITROcrete Trade Secrets.

112. As described in the allegations herein, the NITROcrete Trade Secrets are not generally known.

113. As described in the allegations herein, the NITROcrete Trade Secrets are not readily ascertainable by third parties using legitimate means.

114. As described in the allegations herein, the NITROcrete Trade Secrets derive actual and potential economic value including by not being generally known or readily ascertainable by third parties using legitimate means.

115. As described herein, Plaintiff and its predecessors in interest have taken reasonable measures to keep secret and maintain confidentiality of the NITROcrete Trade Secrets including,

15

but not limited to precluding individuals with such information from divulging information through the use of non-disclosure agreements, marking documents and identifying communications and indicating the confidential, proprietary, and/or trade secret nature of such documents and communications, and maintaining physical possession and control of trade secret, confidential, and proprietary information.

116. As described in the allegations here, Defendants owe a duty or obligation to Plaintiff to maintain the secrecy of the NITROcrete Trade Secrets by, among other things, written agreements including obligations of confidentiality, non-disclosure, and non-use, presence of a confidential relationship, and industry standards.

117. Nevertheless, Defendants have willfully misappropriated and threatened to willfully misappropriate the NITROcrete Trade Secrets by using them and offering to sell them as described in the allegations herein.

118. As a direct and proximate result of Defendants' misappropriation of Plaintiff's confidential, proprietary trade secret information, Plaintiff has suffered and will continue to suffer injury, including but not limited to actual damages and immediate and irreparable harm until Defendants are enjoined from further possession, use, and disclosure of the NITROcrete Trade Secrets.

119. By reason of the foregoing, Defendants are liable in an amount to be determined at trial.

120. Plaintiff lacks an adequate remedy at law.

121. Because of Defendants' violations of the Texas Uniform Trade Secrets Act, TEX. CIV. PRAC. & REM. CODE §§ 134A.001-.008, Plaintiff is entitled, among other remedies, to an injunction prohibiting further possession, use, and disclosure of the NITROcrete Trade Secrets.

## **COUNT 3 – BREACH OF CONTRACT**

122. NITROcrete repeats and realleges paragraphs 1 through 102 hereof, as if fully set forth herein.

123. On or about July 25, 2023, NITROcrete sent additional patent assignment documents ("**Additional Assignments**") to the Nelsons and demanded the Nelsons to sign the Additional Assignments.

124. The Additional Assignments relate to the inventions and improvements set forth and described in the '550 Application, the '456 Application, and the '795 Application as claimed in subsequent patents and patent applications that claim priority to the '550 Application, the '456 Application, and the '795 Application ("**Subsequent Patents**").

125. The Additional Assignments are for the lawful purposes of confirming and further clarifying the public record of NITROcrete's ownership of the Subsequent Patents and applications and estopping the Nelsons from challenging the validity of certain NITROcrete patent rights among other lawful purposes.

126. The Nelsons are obligated to sign the additional assignment documents pursuant to the '550 Assignment, the '456 Assignment, and the '795 Assignment.

127. On or about November 18, 2024, the Nelsons, refused to sign the Additional Assignments.

128. On or about December 5, 2024, the NITROcrete repeated its demand to the Nelsons to sign the Additional Assignments.

129. On or about December 11, 2024, the Nelsons, repeated their refusal to sign the Additional Assignments.

17

130. On or about December 11, 2024, the Nelsons, stated that their refusal to sign the Additional Assignments was to avoid creating an assignor estoppel in favor of NITROcrete that would prevent the Nelsons from challenging the validity certain NITROcrete patent rights.

131. The Nelsons have breached contractual obligations owed to NITROcrete under the '550 Assignment, the '456 Assignment, and the '795 Assignment.

132. The contractual obligations breached by the Nelsons are clear.

133. The damages for the Nelson's breach are and will be difficult to value or speculative.

134. The Nelson's obligation to sign the Additional Assignments under the '550 Assignment, the '456 Assignment, and the '795 Assignment are unique to the inventions and improvements set forth and described in the '550 Application, the '456 Application, and the '795 Application as claimed in the Subsequent Patents.

135. The Nelson's attempt to evade creating an assignor estoppel is a unique injury and harm to NITROcrete.

136. NITROcrete lacks an adequate remedy at law for the Nelson's breach.

137. NITROcrete is entitled to specific performance of execution of the Additional Assignments.

138. The equities relating to the Nelson's breach of their contractual obligations to NITROcrete favor NITROcrete.

170771116

**WHEREFORE**, NITROcrete requests judgment as follows:

    A.    On Count 1, awarding damages in favor of NITROcrete, in an amount to be determined at trial, awarding treble damages to NITROcrete because of Defendants' willful conduct, and granting an injunction prohibiting Defendants from actual or threatened misappropriation of trade secrets owned by NITROcrete.

    B.    On Count 2, awarding damages in favor of NITROcrete, in an amount to be determined at trial, awarding treble damages to NITROcrete because of Defendants' willful conduct, and granting an injunction prohibiting Defendants from actual or threatened misappropriation of trade secrets owned by NITROcrete.

    C.    On Count 3, an order compelling specific performance by Drew Nelson and Mark Nelson of contractual obligations owed to NITROcrete.

    D.    Ordering that Defendants pay to NITROcrete the expenses of this action, including reasonable attorneys' fees, costs and interest.

    E.    Granting NITROcrete such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated:   February 12, 2025 | Respectfully submitted, |
| | **Taft Stettinius & Hollister LLP** |
| | By:   /s/ *Tara M. Williams*<br>Tara M. Williams<br>TX State Bar No.: 24043999<br>twilliams@taftlaw.com<br>**Taft Stettinius & Hollister LLP**<br>675 Fifteenth Street, Suite 2300<br>Denver, CO 80202<br>Telephone: (303) 299-8017<br>Fax: (303) 298-0940 |
| | *Of Counsel:*<br>Jason A. Houdek<br>Jhoudek@taftlaw.com<br>**Taft Stettinius & Hollister LLP**<br>One Indiana Square, Suite 3500<br>Indianapolis, IN 46204<br>Telephone: (317) 713-9458 |
| | *Attorneys for Plaintiff, NITROcrete LLC* |

20

170771116